IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

PHILLIP V. MOORE                    *

        Plaintiff,                  *

vs.                                 *
                                            CASE NO. 3:05-CV-31(CDL)
                                    *
LARRY M. GABRIEL and
TERRY TELLEFSON in their            *
Individual and Official
Capacities,                         *

        Defendants.                 *

_____     *


O R D E R

        Presently pending before the Court is Defendants' Motion for
Summary Judgment (Doc. 31).  For the following reasons, this motion
is denied.

BACKGROUND

        Plaintiff filed this lawsuit in response to his termination as
an employee of Advantage Behavioral Healthcare Systems ("ABHS").
Plaintiff contends that his discharge violated his rights under the
First Amendment and under Georgia's whistleblower statute.  He has
sued the two ABHS employees who he contends are responsible for the
decision to terminate his employment.  Plaintiff asserts his claims
against these individuals in both their official and individual
capacities.

ABHS, which was established pursuant to O.C.G.A. § 37-2-1 et seq., is a community service board serving a ten-county area in northeast Georgia. The agency provides assistance to individuals dealing with behavioral health, developmental disability, and addictive disease issues. Plaintiff began working for ABHS in 1997, and was promoted to the position of facilities operation manager in 1999. As the facilities operation manager, Plaintiff was responsible for supervising the maintenance, housekeeping, and grounds keeping services for each of ABHS's community mental health facilities. Plaintiff reported to Defendant Larry Gabriel, ABHS's chief financial officer, who in turn reported to Defendant Terry Tellefson, ABHS's executive director.

On or about February 24, 2003, Plaintiff wrote a letter to ABHS's Director of Human Resources Terry Frazier ("Frazier memorandum") addressing concerns Plaintiff had about his supervisor, Defendant Gabriel. ABHS had been experiencing "significant budget problems," (Gabriel Depo. 31:25-32:1) which Plaintiff believed were the result of "serious incidents of mismanagement and . . . improper conduct." (Aff. Pl. Ex. A.) In addition to itemizing these "incidents,"[1] the Frazier memorandum alleges that when Plaintiff went

---

[1] The Frazier memorandum outlines suspected instances of waste, fraud, and abuse at ABHS. Specifically, Plaintiff charged that
    (1)   "there were significant problems at [many of ABHS's outlying] clinics";
    (2)   one of the clinics "had no clinicians and no supervisors but . . . was considered open with a residential worker there";
    (3)   some of the "raises given to [] managers . . . were much

to Defendant Gabriel to voice his concerns, he was "threatened with termination . . . if [he] came forth with information of wrongdoing or mismanagement on the part of ABHS." (Aff. Pl. Ex. A.)

In early March 2003, Mr. Frazier forwarded the Frazier memorandum to ABHS's Corporate Compliance Officer Helen Kabat, who initiated an investigation of Plaintiff's complaints. She interviewed Plaintiff, Defendant Gabriel, and "the people . . . in charge of each one of the[] areas [addressed in the Frazier memorandum]." (Kabat Depo. 15:25-16:2.) She also obtained from Defendant Gabriel a written response to each of Plaintiff's allegations. On March 19, 2003, at the end of her investigation, Ms. Kabat submitted a report to the risk management corporate compliance committee. The committee ultimately determined that

---

<ol>
<li value="3">higher than the [] policy of 10%";</li>
<li value="4">a state representative had influenced auditors to "keep the agency from being held accountable";</li>
<li value="5">Defendant Gabriel "deliberately devoted the work of three staff to get rid of another employee under his supervision";</li>
<li value="6">Defendant Gabriel "gave a key to MIS staff [when the procurement warehouse closed] and let them take ABHS property . . . for personal use";</li>
<li value="7">rent paid for the Child & Adolescent Services ("C&A") building was excessive, and repairs were paid for by ABHS when they should have been paid for by the state representative from which the agency rented the building;</li>
<li value="8">the C&A building often had an improper ratio of staff to consumers;</li>
<li value="9">"[t]he management team spent over $2000 for a party";</li>
<li value="10">"[s]ome management team members [] received $100 service bonuses"; and</li>
<li value="11">"ABHS rents buildings that [] remained [unoccupied] . . . ."</li>
</ol>

(Aff. Pl. Ex. A.)

Ms. Kabat's investigation failed to reveal a need for any corrective action within ABHS management.[2]

On April 8, 2003, ABHS management terminated Plaintiff's employment. Plaintiff's supervisor, Defendant Gabriel, explained by letter that ABHS "is and has been experiencing financial difficulties" and that Plaintiff's position had been eliminated. The letter also informed Plaintiff that Defendant Tellefson, as executive director, "approved this reduction in staff and the termination of [Plaintiff's] employment."[3]

Plaintiff now alleges that the purported budgetary concerns were mere pretext, and that Defendants eliminated his position in retaliation for his statements alleging agency fraud, waste, and mismanagement. Plaintiff further contends that both the Frazier memorandum and his three Open Records Act requests were protected speech, and asserts claims under the Georgia whistleblower statute and pursuant to 42 U.S.C. § 1983 for First Amendment retaliation. Defendants dispute that Plaintiff's speech is protected, either by the Georgia whistleblower statute or the First Amendment, and seek summary judgment on each of these claims.

---

[2] On March 6, March 25, and April 1, 2003, Plaintiff also submitted Open Records Act requests for evidence to support his allegations of fraud, waste, and mismanagement. Plaintiff contends that these requests, like the Frazier memorandum, constitute protected speech under the First Amendment.

[3] Plaintiff's position was an unclassified employment position. Consequently, he was considered an at-will employee and was "not entitled to appeal [his termination] to the Office of State Administrative Hearings." (Gabriel Depo. Ex. 6.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of showing that there is no genuine issue of material fact, and may do so by pointing to an absence of evidence to support an essential element of the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 325 (1986). Once the moving party has met its burden, the burden shifts to the nonmoving party to "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. The reviewing court should grant summary judgment only if the combined body of evidence, viewed in the light most favorable to the nonmoving party, would not permit a reasonable jury to find for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

## DISCUSSION

Plaintiff asserts his claims against Defendants in both their individual and official capacities. In response to Plaintiff's § 1983 First Amendment retaliation claims, Defendants contend that Plaintiff's speech is not protected under the First Amendment. Defendants also maintain that even if Plaintiff's speech is

5

protected, they are entitled to qualified immunity in their individual capacities.[4]  Defendants also seek summary judgment on Plaintiff's state whistleblower claims, contending that Plaintiff's disclosures are not protected under the Georgia statute.  For the following reasons, the Court finds that Plaintiff's speech is protected under the First Amendment and under the Georgia whistleblower statute.  The Court also finds that genuine issues of material fact exist to be tried as to whether Plaintiff was terminated because of his protected speech.

## I.    First Amendment Retaliation

### A.    Individual Capacity Claims

In response to Plaintiff's § 1983 claims against the Defendants in their individual capacities, each Defendant now raises a qualified immunity defense.  The qualified immunity defense provides government officials performing discretionary functions with complete protection from damages liability "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Hartley v. Parnell*, 193 F.3d 1263, 1268 (11th Cir. 1999) (*citing Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "To receive qualified immunity, a government official first must prove that he was acting within his discretionary authority."  *Cottone v. Jenne*, 326 F.3d 1352, 1358-59 (11th Cir.

---

[4]Defendants do not raise their qualified immunity defenses directly, but incorporate by reference the arguments presented in the brief which accompanied their Motion to Dismiss or for Judgment on the Pleadings.

2003) (internal citation omitted). Although a defendant traditionally bears the burden of establishing his defenses, "[o]nce a defendant establishes that he was acting within his discretionary authority, the burden shifts to the plaintiff to show that the defendant is *not* entitled to qualified immunity." *Id.* at 1358 (emphasis added).

It is clear that Defendants were acting within their discretionary authority when they authorized the elimination of Plaintiff's position at ABHS. Thus, it is Plaintiff's burden to present sufficient evidence to overcome Defendants' qualified immunity defense. The first step in deciding whether Defendants are entitled to qualified immunity involves a determination of "'whether the plaintiff has [established] the deprivation of an actual constitutional right . . . .'" *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (*citing Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). If the Court finds such violation, it may then "'proceed to determine whether [the] right [violated] was clearly established at the time of the alleged violation.'" *Id.*; *Cannon v. Macon County*, 1 F.2d 1558, 1562 (11th Cir. 1993); *Hartley*, 193 F.3d at 1270-71.

### 1. Constitutional Injury

Plaintiff asserts that Defendants violated his constitutional rights when they eliminated his position at ABHS because of his protected speech. It is well settled that "a state cannot condition public employment on a basis that infringes the employee's

7

constitutionally protected interest in freedom of expression." *Connick v. Myers*, 461 U.S. 138, 142 (1983). Thus, Plaintiff will survive summary judgment if genuine issues of material fact exist as to whether Defendants eliminated his position in retaliation for his exercise of First Amendment rights.

For a government employee to establish a prima facie case of First Amendment retaliation, that employee must show

> 1) that the speech can be fairly characterized as relating to a matter of public concern, 2) that [his] interests as a citizen outweigh the interests of the State as an employer, and 3) that the speech played a substantial role in the government's decision to take an adverse employment action.

*Akins v. Fulton County*, 420 F.3d 1293, 1303 (11th Cir. 2005). If the employee establishes his prima facie case, the burden shifts to the defendant to show that "it would have reached the same decision . . . even in the absence of the protected [speech]." *Anderson v. Burke County*, 239 F.3d 1216, 1219 (11th Cir. 2001) (internal quotation marks and citation omitted).

"The first two elements [of the prima facie case] are questions of law designed to determine whether the First Amendment protects the employee's speech." *Battle v. Bd. of Regents*, 468 F.3d 755, 760 (11th Cir. 2006). If the Court determines that Plaintiff's speech is not protected as a matter of law, Defendants would be entitled to summary judgment. *See id.*; *Anderson*, 239 F.3d at 1219 (11th Cir. 2001) (internal citation omitted). Therefore, the first issue to be

decided is whether Plaintiff's speech is protected under the First Amendment.

### a. PUBLIC CONCERN REQUIREMENT

Although "public employees do not surrender all their First Amendment rights by reason of their employment[,]" there are limits on their right to speak out. *See Garcetti v. Ceballos*, __ U.S. __, 126 S. Ct. 1951, 1957 (2006). The Supreme Court has emphasized that

> when a public employee speaks not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior.

*Connick*, 461 U.S. at 147. When a public employee speaks about private matters, the law does not permit the employee to "constitutionalize [his personal] grievance." *Id.* at 154.

Public employee speech often addresses both public and private concerns. The public nature of a particular form of expression "must be determined by the content, form, and context of a given statement . . . ." *Id.* at 147-48 (footnote omitted). Matters of public concern generally "relat[e] to any matter of political, social, or other concern to the community," *id.* at 146, but "[t]he fact that [] information may be of general interest to the public . . . does not alone make it of 'public concern' for First Amendment purposes." *Morris v. Crow*, 142 F.3d 1379, 1381 (11th Cir. 1998) [hereinafter "*Morris I*"]. Furthermore, "[n]ot only must the speech be related to

matters of public interest, but the *purpose* of the expression must be to present such issues as matters of 'public' concern." *Id.* at 1382 (emphasis added). With respect to the purpose of the speech, the Supreme Court recently clarified that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 126 S. Ct. at 1960.

Defendants do not dispute that the subject of Plaintiff's speech—the mismanagement and waste of state agency resources—is a "matter of political, social, or other concern to the community." *Connick*, 461 U.S. at 146. Instead, Defendants contend that Plaintiff's speech does not satisfy the public concern requirement because "his motivation was not to speak out on matters of public concern, but rather to attack management, fellow employees and persons associated with ABHS." (Defs.' Mem. Supp. Mot. Summ. J. 11.) In support of their argument, Defendants point to the lack of "significant evidence to substantiate any of [Plaintiff's] claims" and his "total disregard for the truth when making an allegation." (*Id.* at 13.) According to Defendants, the Court may infer from these facts that "Plaintiff's comments more closely resemble those of a disgruntled employee than those of someone concerned with informing the public on a public matter." (*Id.*)

The Supreme Court's employee-speech jurisprudence repeatedly emphasizes "the necessity for informed, vibrant dialogue in a democratic society." *Garcetti*, 126 S. Ct. at 1959. Public employees often "are 'the members of a community most likely to have informed and definite opinions' about [government] expenditures." *Id.* (internal citation omitted). Moreover, it is not dispositive that Plaintiff "expressed his views inside his office, rather than publicly," or that his speech may have "concerned the subject matter of [his] employment . . . ." *Id.* ("Employees in some cases may receive First Amendment protection for expressions made at work[,] . . . [and] some expressions related to the speaker's job."). Instead, the pertinent questions are (1) whether Plaintiff's statements were made "pursuant to [his] official duties," *id.* at 1960, and (2) "whether the speech at issue was made *primarily* in the employee's role as citizen," *Morris I*, 142 F.3d at 1382 (emphasis added) (internal quotation marks and citation omitted).

In the first instance, it is clear that neither the Frazier memorandum nor Plaintiff's Open Records Act requests were statements made pursuant to Plaintiff's official duties as facilities operation manager of ABHS. Each of Plaintiff's statements concerns potential mismanagement of agency resources in a time of budgetary crisis. As facilities manager, Plaintiff was responsible for maintenance, housekeeping, and grounds keeping for ABHS's clinical facilities. He did not supervise any other ABHS employee, and was not in a position

either to allocate or evaluate the use of agency funds. Although Plaintiff's knowledge of ABHS's financial problems and the alleged mismanagement of resources stemmed from his employment with the agency, he chose to engage in "the kind of activity engaged in by citizens who do not work for the government" and research these issues through the Open Records Act. *Garcetti*, 126 S. Ct. at 1961. There is simply no evidence to suggest that Plaintiff's statements were made pursuant to his "official duties."[5]

There is also insufficient evidence to support Defendants' argument that Plaintiff voiced his concerns to "attack [] ABHS and its employees." (Defs.' Mem. Supp. Mot. Summ. J. 13.) Though it may be true that Plaintiff "relied predominately on his own opinions, and hearsay from others[,]" (*id.*) this fact alone does not establish that Plaintiff harbored animus toward either ABHS or any of its managers. In fact, it appears from the record that Plaintiff only began to experience employment related problems once he began voicing the

---

[5] In his deposition, Plaintiff was asked whether he was "familiar with [ABHS's] policy regarding reporting fraud, waste, and abuse[.]" (Pl.'s Depo. 22:11-12.) Although Plaintiff responded that he "knew [he] had a responsibility to report it," (*id.* at 22:13-14), this is not enough to establish that Plaintiff spoke "pursuant to [his] *official* duties." *Garcetti*, 126 S. Ct. at 1960 (emphasis added). It is clear from *Garcetti* that the term "official duties" describes only the "daily professional activities" which constitute "the tasks [Plaintiff] was paid to perform . . . ." *Id.* at 1960. The *Garcetti* Court was clear—"employers [cannot] restrict employees' rights by creating excessively broad job descriptions," and "listing [] a given task in an employee's written job description is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties . . . ." *Id.* at 1961-62. As such, the Court declines to find that a periphery obligation, one to which all ABHS employees are subject, was one of Plaintiff's "official duties."

12

concerns listed in the Frazier memorandum. (*See* Gabriel Depo. 30:18-22.)  Under these circumstances, viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff's speech relates to a matter of public concern.  The Court must next determine whether Plaintiff's "interest in engaging in the speech outweighs [Defendants'] interest in prohibiting the speech . . . ." *Anderson*, 239 F.3d at 1219.

b.    THE *PICKERING* BALANCING TEST

In deciding whether Plaintiff's speech is entitled to First Amendment protection, the Court must also consider whether Defendants' interest in promoting the efficient operation of ABHS outweighs Plaintiff's interest, as a citizen, in commenting on matter of public concern.  *See Pickering v. Bd. of Ed.*, 391 U.S. 563, 568 (1968).  Relevant to this determination is both the content of the employee's speech and the "manner, time, and place in which it is delivered."  *Morris v. Crow*, 117 F.3d 449, 457 (11th Cir. 1998) (quotation marks and internal citation omitted) [hereinafter "*Morris II*"].  "One relevant consideration is whether the speech at issue 'impairs discipline by superiors or harmony among co-workers, has a detrimental impact on close working relationships for which personal loyalty and confidence are necessary, or impedes performance of the speaker's duties or interferes with the regular operation of the [public employer's] enterprise.'"  *Id.* at 457-58 (alteration in original) (internal citation omitted).

Defendants argue that Plaintiff's statements (1) "harmed" ABHS management, (2) required the use of ABHS resources "to launch an internal investigation[,]" (3) "created low morale among the employees[,]" and (4) "disrupted the agency's ability to effectively run its programs." (Defs.' Mem. Supp. Mot. Summ. J. 14-15.) Looking to the manner, time, and place in which Plaintiff chose to voice his concerns, the Court cannot conclude, as a matter of law, that Defendants' interests in limiting the speech outweigh Plaintiff's interest in expressing it. According to Defendants, Plaintiff's speech was not protected because his "complaints [were] without merit" and "caused unnecessary harm and scrutiny to ABHS in addition to requiring limited agency resources to investigate erroneous claims." (*Id.* at 15.) However, the entire investigation lasted less than a month, and was conducted entirely through ABHS's corporate compliance division. There are no affidavits or other evidence, other than Defendants' own beliefs, to support Defendants' contentions that the investigation lowered morale or disrupted the normal functioning of ABHS activities. The minimal amount of time required to interview employees in connection with Plaintiff's allegations is not sufficient interference with the "regular operation" of ABHS to deny Plaintiff's speech the First Amendment protection it would otherwise enjoy. Accordingly, the Court finds that Plaintiff's speech is entitled to First Amendment protection.

14

c.   RELEVANCE OF PROTECTED CONDUCT TO THE ADVERSE
EMPLOYMENT ACTION

Although Defendants' do not specifically address whether Plaintiff's protected speech was a "substantial factor" in eliminating his position, or whether they would have reached the same decision absent the protected conduct, the Court must consider these issues in connection with Defendants' qualified immunity defenses. In the present case, for Plaintiff to establish a constitutional injury, the evidence must be sufficient for a reasonable jury to find that Defendants eliminated Plaintiff's position in retaliation for his protected speech.   Defendants are entitled to both qualified immunity and summary judgment if the evidence fails to create a genuine issue of material fact.

As noted above, the third element of Plaintiff's prima facie case of First Amendment retaliation is that his protected speech played a substantial role in Defendants' decision to eliminate his position.  The Eleventh Circuit has held that "the plaintiff's burden in this regard is not a heavy one[,]" and that "[i]t is neither possible nor desirable to fashion a single standard for determining when an employee has met [his] initial burden of demonstrating that a retaliatory intent was a 'substantial' or 'motivating factor' behind a government employment decision." *Stanley v. City of Dalton*, 219 F.3d 1280, 1291 (11th Cir. 2000) (second alteration in original) (quotation marks and internal citations omitted).  In conducting its examination, however, a court should consider

(1) whether "termination closely follows protected activity";

(2) "whether any other asserted reasons for the termination were shown to be pretextual";

(3) "any comments made, or actions taken, by the employer indicating that the discharge was related to the protected speech";

(4) "whether the asserted reason for the discharge varied"; and

(5) "circumstantial evidence of causation including such facts as who initiated any internal investigations or termination proceedings, whether there was any evidence of management hostility to the speech in question, or whether the employer had a motive to retaliate."

*Id.* at 1291 n.20. "There is no one action that is outcome determinative, but all factors must be taken into account." *Id.*

Defendants submit that neither the Frazier memorandum nor Plaintiff's Open Records Act requests influenced their decision to eliminate his position. Instead, they argue that they eliminated the facilities operation manager position because of ABHS's ongoing budgetary concerns. According to Defendant Gabriel,

> [w]e had had high use for [Plaintiff's] position in the six to nine months coming up to [ABHS's] accreditation[,] . . .

16

> [but] it was a position I saw I would have less duties for,
> less need for when I had to find a way to cut some
> expenses. I took that information to our committee where
> we were looking at the budget reductions, and that was one
> of the ones that was eliminated.

(Gabriel Depo. 36:16-18, 20-24.) It is Defendants' contention that the decision to eliminate Plaintiff's position was wholly unrelated to his protected activity.

Considering all the relevant factors, the Court concludes that genuine issues of material fact exist as to whether Plaintiff's speech was a substantial motivating factor in the termination of his employment. First, Plaintiff received his termination letter on April 8, 2003, which was approximately one-and-a-half months after the Frazier memorandum, a week after his last Open Records Act request, and about one month after Ms. Kabat concluded her investigation into Plaintiff's complaints. Given the close temporal proximity between Plaintiff's protected conduct and the adverse employment action, "it is [] reasonable to infer that the activity was the cause of [his termination]." *Stanley*, 219 F.3d at 1291 n.20. Second, it is significant that Defendant Gabriel was the one to suggest the elimination of Plaintiff's position. As one of the primary subjects of the Frazier memorandum, Defendant Gabriel had a motive to retaliate against Plaintiff. Additionally, when asked whether "any other employees in the business office [were] laid off in 2003[,]" Defendant Gabriel answered "[n]ot that I remember." (Gabriel Depo. 40:24-41:1.) He also admits that the elimination of

17

Plaintiff's position was one of only a few remedial measures actually implemented in early 2003.[6]  (*See id.* 39:11-40:19.)  Finally, the evidence shows that almost exactly one year after Defendants eliminated Plaintiff's position, they created the new position of "Grants, Facilities and Special Project Director" and paid Plaintiff's purported replacement over $10,000 per year more than the salary Plaintiff earned while employed by ABHS.[7]  In sum, Plaintiff has presented sufficient evidence to create a genuine issue of material fact as to whether his speech was a substantially motivating factor in Defendants' decision to eliminate his position at ABHS. Based on this same evidence, there is also a genuine issue as to whether Defendants would have reached the same decision in the absence of Plaintiff's protected speech.  Therefore, the Court finds sufficient evidence to create a jury question on the issue of Plaintiff's constitutional injury.

> 2.  *Clearly Established Law*

To overcome Defendants' qualified immunity defense and summary judgment, however, Plaintiff must also establish that the First

---

[6]ABHS did take other remedial measures, including the elimination of several group homes, combining the Greene County and Oglethorpe offices, and eliminating the salaries of some full-time independent contract work. (*See* Tellefson Depo. 13:4-14.)  Among the options considered, but rejected, were proposals to (1) close an ABHS detoxification unit, (2) implement a ten percent pay cut to ABHS employees, and (3) implement a twenty percent pay cut on management employees.  (*See* Gabriel Depo. 39:20-40:19.)

[7]The duties covered by the new position are not identical to those Plaintiff performed as facilities operations manager, and the new position carries a greater amount of responsibility.

18

Amendment right that Defendants allegedly violated was "clearly established" at the time of the alleged violation. "To demonstrate that the law is clearly established, a party is not required to cite cases with materially similar facts. . . . Rather, the state of the law at the time of the unconstitutional act must be established sufficiently to give 'fair warning' to the official that his conduct is unlawful." *Akins*, 420 F.3d at 1305 (internal citation omitted).

The parties do not dispute that Defendants were on notice that it would violate clearly established law to fire Plaintiff for a legitimate exercise of his First Amendment right to free speech. As noted above, however, Defendants contend that Plaintiff's speech was not protected. Accordingly, to establish the final element of his § 1983 claim, Plaintiff must show that the law was clearly established as to the protected status of his speech.

The Court has found that the Frazier memorandum and Plaintiff's Open Records Act requests satisfy the requirements for protected speech. The speech clearly relates to the potential abuse and mismanagement of ABHS resources by agency officials. The Eleventh Circuit has been very explicit that "[a] 'core concern' of the First Amendment is the protection of whistleblowers who report government wrongdoing." *Akins*, 420 F.3d at 1304. Accordingly, the state of the law is "clearly established" such that Defendants had notice that (1) Plaintiff's speech related to matters of public concern, (2) his interest in the speech outweighed the State's interest in restricting

the speech, and (3) if they terminated Plaintiff's employment because he engaged in protected speech, they could be liable for damages under § 1983. *See generally id.* Consequently, the Court finds that Defendants are not entitled to qualified immunity and denies their Motion for Summary Judgment on Plaintiff's claim of First Amendment retaliation.

B.   Official Capacity Claims

Plaintiff also asserts his § 1983 claim against each Defendant in his official capacity. However, unlike his individual capacity claims, Plaintiff does not seek monetary damages against Defendants in their official capacities. Instead, Plaintiff limits his claim for relief to one for reinstatement. (*See* Compl. 4-5.) Since reinstatement is a form of prospective injunctive relief, Plaintiff's "request for reinstatement is not barred by the Eleventh Amendment." *Cross v. State of Alabama*, 49 F.3d 1490, 1503 (11th Cir. 1995) (*quoting Lassiter v. Ala. A&M Univ.*, 3 F.3d 1482, 1485 (11th Cir. 1993)). Therefore, the Eleventh Amendment does not provide an appropriate basis for granting summary judgment on Plaintiff's official capacity reinstatement claim.[8] Furthermore, as the Court has previously found regarding Plaintiff's individual capacity claims,

---

[8]It appears that Eleventh Amendment immunity would be implicated as to any damages claims against Defendants in their official capacities given the fact that community service boards like ABHS have been found by the Georgia Supreme Court to be departments or agencies of the State of Georgia. *See Youngblood v. Gwinnett Rockdale Newton Cmty. Serv. Bd.*, 273 Ga. 715, 716, 545 S.E.2d 875, 877 (2001).

*see generally supra* part I, subpart A, there is sufficient evidence that Plaintiff's employment was terminated because he engaged in protected speech to permit a jury to decide his § 1983 claim for First Amendment retaliation. Accordingly, the Court denies Defendants' Motion for Summary Judgment as to Plaintiff's official capacity claim for reinstatement.

## II. State Law Whistleblower Claim

The Georgia whistleblower statute, O.C.G.A. § 45-1-4, states:

> No public employer shall retaliate against a public employee for disclosing a violation of or noncompliance with a law, rule, or regulation to [] a supervisor . . . , unless the disclosure was made with knowledge that the disclosure was false or with reckless disregard for its truth or falsity.

O.C.G.A. § 45-1-4(d)(2) (1993). The statute also expressly permits "a public employee who has been the object of retaliation" to "institute a civil action" seeking (1) an injunction, (2) reinstatement, or (3) compensation for lost wages and benefits. *Id.* at § 45-1-4(e)(1)-(2)(E).

Defendants argue that Plaintiff's disclosures are not protected by this statute because they "were poorly investigated and [Plaintiff] relied on his own incomplete observations and hearsay." (Defs.' Mem. Supp. Mot. Summ. J. 17.) Although Defendants believe that Plaintiff acted with reckless disregard for the truth in drafting the Frazier memorandum, the evidence is not sufficient to establish such reckless disregard as a matter of law. Viewing the facts in Plaintiff's favor, the evidence shows that: (1) Plaintiff

21

became concerned by rumors of wasteful spending by ABHS management; (2) he reported those concerns to his immediate supervisor, Defendant Gabriel, who then threatened Plaintiff's employment if he "came forward with information of wrongdoing or mismanagement," (Aff. Pl. Ex. A); and (3) Plaintiff reported this threat and immediately began to investigate the validity of the accusations contained in the Frazier memorandum. Genuine issues of material fact exist as to whether Plaintiff made his statements about the potential fraud, waste, and abuse of ABHS resources with "reckless disregard" for the truth of those statements. Accordingly, the Court denies Defendants' Motion for Summary Judgment on Plaintiff's state law whistleblower claim.

## CONCLUSION

For reasons stated above, the Court finds that genuine issues of material fact exist with respect to Plaintiff's federal and state law claims. Accordingly, the Court finds:

(1) With respect to Plaintiff's First Amendment retaliation claim against Defendants in their official capacities, for which Plaintiff only seeks prospective injunctive relief, Defendants' Motion for Summary Judgment (Doc. 31) is denied.

(2) With respect to Plaintiff's First Amendment retaliation claim against Defendants in their individual capacities, Defendants are not entitled to qualified immunity and their Motion for Summary Judgment (Doc. 31) is denied.

(3)    With respect to Plaintiff's claims under the state whistleblower statute, O.C.G.A. § 45-1-4 *et seq.*, Defendants' Motion for Summary Judgment (Doc. 31) is denied.

IT IS SO ORDERED, this 23rd day March, 2007.


S/Clay D. Land
_____
CLAY D. LAND
UNITED STATES DISTRICT JUDGE